EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
Joey L. Blanch
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
California Bar Number:  186487
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3315
     Facsimile: (213) 894-3713
     E-mail: joey.blanch@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 16-431-JFW |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION |
| v. | |
| MICHAEL QUINN,<br>   aka "Mick,"<br>   aka "southof,"<br>   aka "inhere," | |
| Defendant. | |

Plaintiff United States of America, through its counsel of record, the United States Attorney's Office for the Central District, hereby submits its position re: sentencing of defendant Michael Quinn, pursuant to Rule 32(b)(6)(B) of the Federal Rules of Criminal Procedure. This position is based on the attached Memorandum, the Pre-Sentence Report, the files and records of this case, any exhibits

//

in support of the government's sentencing position filed separately, and any argument to be presented at the sentencing hearing.

Dated: Oct. 6, 2016                     Respectfully submitted,

                                        EILEEN M. DECKER
                                        United States Attorney

                                        LAWRENCE S. MIDDLETON
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                             /S/
                                        JOEY L. BLANCH
                                        Assistant United States Attorney

                                        Attorneys for Applicant
                                        UNITED STATES OF AMERICA

**MEMORANDUM**

**I.     INTRODUCTION**

Defendant Michael Quinn ("defendant") is a 33-year old Australian geneticist who arranged to rape a 6-year-old boy in Los Angeles in exchange for $250. When he showed up at the hotel where the sex was to take place, and paid his money, defendant was arrested. He was charged with sex trafficking of a minor in violation of 18 U.S.C. § 1591, which carries a 15-year mandatory minimum sentence, and travel with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(b), which carries no mandatory minimum sentence. Defendant pleaded guilty to § 2423(b) pursuant to a plea agreement in which the parties agreed that the appropriate sentence is between 10 and 14 years. The United States Probation Office ("USPO") has determined that the advisory sentencing range is 108-135 months, and recommended a sentence of 10 years. The government agrees with this guideline calculation, but recommends a sentence of 12 years – 144 months. While this sentence is slightly higher than the guideline range, it is at the middle of the 10-to-14-year sentencing range agreed to by the parties pursuant to the plea agreement, and is three years lower than the 15-year mandatory minimum which defendant would have faced pursuant to § 1591.

**II.    Summary of Offense Conduct**

Defendant resided in Australia. Sometime before May 21, 2016, he made plans to travel from Australia to the United States, visiting Los Angeles, Nashville, and New York. Prior to his departure, defendant went online to an Internet social networking site (the "Social Networking Site"), looking to have sex with children while he was in the United States. He posted: "Aussie perv, heading to the US

3

late May/June interested to meet others while I'm there. LA, Nashville, NYC." Fortunately, U.S. law enforcement saw this post and intervened. On May 6, 2016, using an undercover account on the Social Networking Site, an HSI agent responded to defendant's post, simply asking defendant what he was looking for in Los Angeles. Defendant flatly admitted that he was looking for sex with children. Without hesitation he stated "I'd like to meet up with a dad whos shares his yng ones …"

Between May 6 and May 19, 2016, the undercover law enforcement agent communicated with defendant using three different undercover personas, referred to herein as UCA1, UCA2, and UCA3. UCA1 was the first person to respond to defendant. After defendant told UCA1 that defendant was looking for sex with young children, UCA1 told defendant that there was a group of men in Los Angeles who sometimes met for that purpose, and referred defendant to UCA2 and UCA3. UCA2 was the person who purportedly had the "hookup," a connection to the human trafficker who supplies the children, and UCA3 was purportedly an older man who had previously joined UCA1 and UCA3 in having sex with children. When UCA1 told defendant about UCA2 and UCA3, defendant reached out to communicate with both UCA2 and UCA3 to make arrangements to have sex with a child while defendant was in Los Angeles. Ultimately, defendant made arrangements to meet UCA1 and UCA2 at a hotel on the afternoon of Saturday, May 21, 2016 and have sex with children together.

The relevant portions of defendant's communications with the undercover law enforcement agent are as follows:

    **1.    April 28, 2016, Post on Social Networking Site Made By Defendant**

4

|   |   |
|---|---|
| Defendant: | **Subject of Post "Find Other Pervs :P"** |
| Defendant: | Aussie perv, heading to the US late May/June interested to meet others while I'm there.  LA, Nashville, NYC. |

**2.   May 3-6, 2016, Private Email Messages on Social Networking Site Between UCA1 and Defendant**

|   |   |
|---|---|
| UCA1: | What are you looking to get into in LA?  I have hookups for certain activities. |
| DEFENDANT: | I'd like to meet up with a dad whos shares his yng ones … |
| UCA1: | Theres a place I can take you to enjoy a yng one. What age u like?  B or G?  A group of us here get together and share some yng.  Theres a small thread on it right now. |
| DEFENDANT: | I'd really appreciate that!!!  I like both … refer B 5-10 fave. |
| UCA1: | Nice choices.  I like g 5-6 yo. |

**3.   May 6, 2016 Conversation Between Defendant and UCA1 on Kik**

|   |   |
|---|---|
| DEFENDANT: | Hi mate. |
| UCA1: | Hey bud. Its [UCA1] from [the Social Networking Site].  Hey.  U found me. |
| DEFENDANT: | Yeh thanks for connecting man. |
| UCA1: | Np.  Always looking for like minded buds.  Esp overseas.  Dont like living life in a bubble. |
| DEFENDANT: | I agree mate.  Looking forward to my trip to the US.  Keen to meet other pervs while I'm there. |
| UCA1: | Sounds like youll be here for a while.  In the US.  When u hitting up LA? |
| DEFENDANT: | 3 weeks all up.  I fly into LA on 19th May. |
| UCA1: | When u leave LA? |

| | | |
|---|---|---|
| DEFENDANT: | 24th You think you can organize something? |
| DEFENDANT: | Still there mate? |
| UCA1: | Yep. Give me a sec. Driving. |
| DEFENDANT: | No worries mate. |
| UCA1: | Ok. Most def cant get it together. Ive used this place many times over the last couple yrs. Very discrete. Price depends on ifu want sucked or u want to fukk his boi hole. |
| DEFENDANT: | Ok cool. Approx how much? |
| UCA1: | Which u want? My last time there I had a 6 yo. I fukked him. It cost 250 for an hour. I think I can get him to up it to 90 mins though. |
| DEFENDANT: | Nice! That's perfect. Who's the guy? Would love to share one with you mate. |
| UCA1: | Haha. What I was hoping but didnt want to come off as a pushy american. He's on [the Social Networking Site]. Ill let him know u are interested. |
| DEFENDANT: | lol lol all good mate – love the idea of sharing with a buddy. Yeh if appreciate that mate. Would like an introduction for sure. Got any pics of yourself to swap? All good if you don't. I understand the discretion that's required. |
| UCA1: | Yeah. Id say for both our safety we prob shouldn't. Our lifestyle is frowned upon here in the states. |
| DEFENDANT: | I know mate – likewise here in Aus. A bit nervous about it all to be honest mate. How do you know it's all safe etc? Is your mate online now on [the Social Networking Site]? |
| UCA1: | Hang on. Let me see. |
| DEFENDANT: | Ok. |
| UCA1: | No. His name is [UCA2]. I sent him a message already. I just took the old man tues. night. |

6

|   |   |   |
|---|---|---|
| | | Check him out.  All is discreet.  Ive been a bunch.  Ive taken several guys to party there. |
| DEFENDANT: | | Ok nice one!  I'll have a look.  Your old man? |
| UCA1: | | Haha.  No.  Not my pops.  Old dude on [the Social Networking Site].  I'll email u on [the Social Networking Site].  The link. |
| DEFENDANT: | | Hehe thanks mate.  Just on there now.  Would like some introductions to any decent buddies you have on there.  Keen to connect with other pervs. |
| UCA1: | | Hit up [UCA2] and [UCA3].  U have a nastykinkpig account? |
| DEFENDANT: | | Yeh will do – trying to figure out how to search for profiles on [the Social Networking Site]. |
| UCA1: | | It sucks.  Def not easy to seRch.  Okay I'm going to fight LA traffic.  Hmu later or this weekend.  Looki g forward to hooking up. |
| DEFENDANT: | | I found [UCA2].  You mind if I mention I know you? |
| UCA1: | | That's cool.  Hes a good dude. |
| DEFENDANT: | | Thanks.  I've message him.  Can't find [UCA3] though. |
| UCA1: | | [UCA3].  Go to my profile.  Hes under friends I think. |
| DEFENDANT: | | Yeh I've sent a friend request to both of them.  I like catching up with older experienced pervs – they've got good profiles. |
| DEFENDANT: | | So fucking horny for a bald pink hole on my cock. |

**4.   May 7, 2016 Conversation between Defendant and UCA3 on the Social Networking Site**

| | | |
|---|---|---|
| UCA3: | | Hello young man.  An Aussie aye?  I have run acfross a couple of Aussie pervs on here recently.  I guess the Aussies are waking from the winter slumber and looking to play.  Ha Ha Ha.  So you are friends with [UCA1]?  I need to |

7

|   |   |   |
|---|---|---|
| | | thank him for the kind words.  Unfortunately I am not able to provide the action I am thinking you are looking for.  Let me know [UCA1] has guided you in the right direction.  I think I might be ready for another round of fun.  If you understand what I am saying. |
| | DEFENDANT: | Yep, an Aussie fella here – this is a great site to meet our fellow pervs and good to hear there's a few of us down under.  I'm awake and very keen for some hot action that's for sure.  Me and [UCA1] have been chatting a bit – nice guy.  Yeh he's definitely guiding me in the right direction for when I come and visit and if like a man like you be involved for sure.  Another round and an Aussie buddie to help out??  Makes my dick so hard! |
| | UCA3: | If the goods are available and I'm around I'll for sure jump in and play.  What dates will you be in sunny California? |
| | DEFENDANT: | Good to hear mate!  I'll be there from 19th May to 24th  Would like to catch up with you guys either way but really want the goods if we can … Are you on wicker or kik etc? |
| | UCA3: | Ok so that's soon.  I'm around.  I have a little holiday planned for late June.  I'll get on [UCA1] to get the plans set.  I'm starting to get revved up now!  Not sure what wicker is.  Guessing it is like kik.  I don't have kik.  [UCA1] tried to get me on kik.  I asked why we do I need it?  [UCA1] said so we can talk.  I told him to fucking call me if he wanted to talk.  That's what a telephone number is for. |
| | DEFENDANT: | lol good point.  Just makes it a bit quicker than messaging on here.  A bit more secure too.  I'm getting revved as well.  I'd be keep to chat on the phone soon too if you're up for it? |
| | UCA3: | I guess I never really needed it since my friends are all local.  Or local compared to being down under.  I'll look it up online and how to use it.  What is your name on kik? |
| | DEFENDANT: | Nice one – definitely add me to kik  My name is "southof" on there |

8

| | |
|---|---|
| UCA3: | I'll look into kik this weekend. Hope I talk with you before the year 2019. Ha ha I'm going to put my old bones to bed. Talk with you this weekend Mick. |

5. **May 7-8, 2016 Conversation Between Defendant and UCA2 on the Social Networking Site**

| | |
|---|---|
| UCA2: | Hey bud. Lol [UCA1] knows everyone. He mentioned someone was going to be hitting me up. As long as he's your bud I'm good then. He and a couple other pervs get together. If you are interested in some yng let me know. |
| DEFENDANT: | I'm glad he mentioned I was going to get in touch. He's a decent guy and helped me out on here that's for sure. He mentioned that you guys have fun when you all get together. I'm definitely keen to join in. I'm in Australia. I'm visiting LA, Nashville and NYC. |
| UCA2: | Good to hear. We always like to welcome others to the group. He mentioned some dates. And I see you are traveling around a bit. What dates will you be in LA? What date you wanted to party on while here? You pick. We perv whenever. Which brings me to the ???????, did [UCA1] tell you want goes on? I don't want you to be surprised. |
| DEFENDANT: | My wickr ID is "inhere." |

6. **May 8, 2016 Conversation Between Defendant and UCA1 on the Social Networking Site**

| | |
|---|---|
| DEFENDANT: | Hi buddy, how's it going? |
| UCA1: | Hey man. Alright. What's up with u? |
| DEFENDANT: | Real horny for a perv here mate. I connected with [UCA2] – thanks |
| UCA1: | haha. Hurry up and hit LA. You'll feel much better. LOL. Which date u feeling for the party so I can tell [UCA2] to reserve the pups. And so |

```
                          I can tell the couple other guys wanting to come.
                          That's good u hit him up.  He makes the magic
                          happen.
```

**7.   May 14-18, 2016 Conversation Between Defendant and UCA2 on the Social Networking Site**

```
UCA2:            Whats up perv?  What u been up to?

DEFENDANT:       Getting ready for my trip.  I leave tomorrow
                 (Thurs. morning).  Are we catching up??

UCA2:            Hey there.  Yea we are hooking up.  Might be
                 easier to chat on kik about our plans.  Did
                 [UCA1] give you the details of whats up?  Need to
                 make sure all is cool before we show up for the
                 goodies.

DEFENDANT:       I couldn't find you on wickr using [UCA2]?

UCA2:            no its [UCA2]2  fukkers banned me!  Lol
```

**8.   May 18, 2016 Conversation Between Defendant and UCA2 on Wicker**

```
DEFENDANT:       Hi mate, Aussie Perv from [the Social Networking
                 Site] here.

UCA2:            Go u lets keep our chat here

DEFENDANT:       I agree.  Safer here.

UCA2:            I agree. What day u want to play?  I can get us
                 booked.

UCA2:            [At approximately this point in the chat, UCA2
                 also asked defendant "what floor" he wanted to
                 "play" on, but this portion of the chat was not
                 captured]

DEFENDANT:       Can do Friday or Saturday?  Any day from tomorrow
                 through Monday night works for me.  I can be
                 flexible with times.

UCA2:            Sat night or sat day?
```

10

| | | |
|---|---|---|
| DEFENDANT: | One thing in my mind is – we've haven't met and would probably want to meet up and have a pipe or two before anything happens.  Make sure we're comfortable etc? |
| DEFENDANT: | Sorry mate, what do you mean by floor.  Okay sorry, a floor, as in level  probably floor 4 or 5 are good |
| UCA2: | Oh.  Sorry.  Yeah what age. |
| DEFENDANT: | 5-8 faves.  What are your thoughts? |
| UCA2: | Nice one.  It's 250 to ball him.  175 for sukk only.  He has a 6th floor boi.  Is that ok? |
| DEFENDANT: | Sure thing.  So who will be joining? |
| UCA2: | Yours truly.  [UCA1] and the old man.  Another dude can't make it so he is going later on. |
| DEFENDANT: | Sounds like great fun to me mate.  Never done this before mate-can we meet before for introductions etc?  Do you guys party? |
| UCA2: | Everyone is discreet.  No one takes pictures at these things.  No one passes along our names on [the Social Media Site] or wickr.  The guy with the toys runs this biz.  He will tell u not to mention these parties. |
| DEFENDANT: | Ok.  Can I meet up with you before? |
| UCA2: | We party afterwards usually.  Esp. since we are going to have fun during the day.  We can roll that night.  Sure thing.  We can grab a drink before heading up sat. |
| DEFENDANT: | Ok I'd appreciate that mate.  The only reason why I'd want to party is to know you're not cops.  Have a pipe and show our cocks – something like that … |
| UCA2: | Lol.  I get you.  But we arent police.  But not sure any of us party that hard.  Ha.  We normally have a few scotch or bourbons. |
| DEFENDANT: | lol ok fair enough mate.  Not something I do often by trying to make sure it's all cool. |

11

|  |  |  |
|---|---|---|
|  |  | Happy to meet up with you guys before and go from there.  What area will I need to meet you in? |
| UCA2: |  | Everything cool.  Let me ask where he wants us.  Ill shout at him and get the hotel he will be at.  Are u cool getting there?  Know your way around LA? |
| DEFENDANT: |  | Don't know my way round… Staying in a house with a bunch of buddies near Hollywood Heights. |
| UCA2: |  | U want me and [UCA1] to pick you up?  Dont want to put you on the spot.  But the offer is there.  If not id suggest uber.  Do you guys have uber?  Oh wow.  Are the other dudes coming or hust you playing? |
| DEFENDANT: |  | lol lol just me mate – I wish they were … Maybe you guys could pick me up nearby.  Otherwise I'm cool with uber. |
| UCA2: |  | Yea we can come up.  Let us know whats nearby so you can slip out.  Whateber works for you. |
| DEFENDANT: |  | Ok I fly out in about 5hrs.  Will be there at 6am LA time Thursday. |
| UCA2: |  | Very nice.  Safe travels.  Shoot me a message tomorrow when you can.  I told our guy 1pm Saturday.  Ill let you know. |
| DEFENDANT: |  | Ok sounds good.[1] |

On May 19, 2016, defendant travelled from Australia to Los Angeles.  When defendant arrived in the United States, he continued communicating with UCA1 and UCA2, confirming the arrangements to meet two of them at the hotel and have sex with children.

---

[1] Defendant globally objects to any facts in the PSR which were not specifically agreed to in the plea agreement.  However, the defendant failed to point to any particular fact in the PSR with which he disagreed, or which he believed was based on multiple layers of hearsay.  The government provided the USPO with copies of the discovery, including photographs of the telephone screens preserving the chats, and reports regarding the evidence items found on defendant's arrest.  The government will file this supporting evidence separately, under seal.

On Saturday May 21, 2016, defendant took an Uber to the hotel, then texted UCA1 to get the room number. He went to the room and met UCA1 and UCA2, both played by undercover law enforcement. As the three waited for the human trafficker to bring the children, defendant drank beer and ate cupcakes and indicated that he was "excited and nervous." Shortly thereafter, the human trafficker – also an undercover law enforcement officer -- arrived. The human trafficker conversed briefly with UCA2 in Russian, then turned to defendant and said, in English, "money time." In response, defendant paid him $260 – slightly more than the price previously agreed upon for defendant to anally rape the child. As soon as defendant paid his money, he was arrested.

Defendant's iPhone was seized at the time of his arrest. A search warrant was subsequently executed on the phone. Agents also went to the rented home where defendant and his friends were staying while in Los Angeles and retrieved defendant's belongings, including an iPad. A search warrant was executed on these belongings. A search warrant was also executed on defendant's Social Networking Site account. Evidence seized includes the following:

- confirmation that defendant was the individual who communicated with UCA1, UCA2 and UCA3 about meeting to have sex with children.

- approximately images of child pornography depicting young boys on defendant's phone.

- evidence that the case agent was not the only individual who responded to defendant's post on [the Social Networking Site], seeking to meet up with like-minded people in the United States. It appears that someone in the New York area also responded to defendant's post, seeking to find like-minded "pervs" on his trip to the United States; defendant was communicating with him about meeting in person.

13

- evidence that Defendant was a member of a members-only site known to law enforcement to be a place where individuals with a sexual interest in children meet and discuss that interest. There was further evidence that defendant authored a blog on this site titled "cum on kids" and visited a blog titled "pedo dump."

- one meth pipe and what appears to be meth (it field tested positive for meth).

**III. Sentencing Guidelines**

In the plea agreement, the parties agreed that because the offense involved interstate travel with intent to engage in a sexual act with a minor who had not attained the age of 12 years, U.S.S.G. § 2A3.1 applies. See comment (3) to U.S.S.G. § 2G1.3. The parties further agreed to the following sentencing guidelines calculations:

    Base Offense Level: 30   U.S.S.G. § 2A3.1(a)(2)

    Victim under 12:    +4   U.S.S.G. § A3.1(b)(2)(A)

    Use of computer:    +2   U.S.S.G. § A3.1(b)(6)(B)

    Acceptance of Responsibility: -3   U.S.S.G. § 3E1.1(b)

    Total Offense Level:    33

    Criminal History Category:    I

    Guideline Range:   135-168 months' imprisonment

In the PSR, the USPO agreed with the calculations set forth in the plea agreement, except that the probation office determined that the 2-level enhancement for "use of a computer" pursuant to U.S.S.G. § A3.1(b)(6)(B) does not apply. The parties have reviewed the language of U.S.S.G. § A3.1(b)(6)(B), including the application notes thereto, and agree with the probation office that pursuant to the specific facts of this case, this enhancement does not apply.[2] Therefore, the

---

[2] The government had communicated with defense counsel, and the parties stipulate that despite the plea agreement this enhancements does not apply.

14

government agrees with the USPO that the total adjusted offense level is 31, and the advisory guideline range is 108-135 months.

**IV.   Government's Sentencing Recommendation**

Defendant is a 33-year old man with no criminal history. By all accounts he is intelligent, sociable, well educated, and well liked. He has the support of family, friends, and employers. Defendant is also a drug addict and attempted rapist.

Despite the friendly, congenial mask defendant showed to the world, defendant lived a secret life online. He used the anonymity of the Internet to share his secret sexual interest in children, searching out like-minded people and ultimately arranging to purchase a six-year-old boy he intended to sodomize. In this case, luckily, defendant was communicating with undercover law enforcement, and no actual six-year-old child was at risk. But defendant did not know this – the evidence is very clear that defendant had every intention of raping an actual six-year-old child, and watching while other men raped that child as well.

Defendant cites his drug use as a mitigating factor. There is no dispute that defendant has a serious problem with methamphetamine. However, the evidence makes it clear that defendant's desire to rape a child was not a momentary drug-fueled aberration:

- On April 28, defendant posted on a social networking site that he was traveling to Los Angeles and was looking for like minded "pervs." UCA1 did not respond to defendant's solicitation until three days later; if defendant's initial solicitation was the result of methamphetamine and not a sexual interest in children, defendant had plenty of time to sober up and reconsider. However, he did not back down,

15

1    instead making his search for sex with minors more
2    explicit.  (He told UCA1 that he was looking for dads who
3    share their "yng one.")

- When UCA1 told defendant that a group of men in the Los
  Angeles area sometimes got together to share sex with
  children, and that defendant could participate while he was
  in Los Angeles, again, defendant made a choice to proceed,
  responding enthusiastically "I'd really appreciate that!!!"

- Over a period of almost a month, defendant used multiple
  communication platforms and online accounts to have many
  conversations with at least three different "people,"
  attempting to purchase sex with a child.  At every turn,
  defendant could have withdrawn, or cut off communication,
  but instead he actively pursued sex with minors.

- Twice, defendant was asked what age and sex of child he
  preferred and he did, indeed, have preferences:  once
  defendant said that he likes both boys and girls, but
  prefers boys aged five-ten years old; in a later
  conversation, he said his favorites were 5-8 years old.
  This clearly indicates that defendant's behavior was driven
  by his own sexual interests.  While drugs may have lowered
  his inhibitions, causing him to behave in a reckless
  manner, they did not cause defendant to be sexually
  interested in children.

- During the initial conversation with UCA1, defendant was
  told that UCA1 had sodomized a 6-year-old boy.  Defendant
  thus had plenty of time to contemplate whether he, too,
  wanted to engage in this activity.  Days later, when told

1           that a 6-year-old boy was available for defendant,
2           defendant agreed.
3       • Making it clear this was not simply drug-induced fantasy,
4           defendant very practically asked about the price.  He was
5           told that the price depended on the sex acts he wanted to
6           perform with the child – it was $175 an hour to have oral
7           sex with a six-year-old, and $250 an hour to have anal sex
8           with a six-year-old.  Defendant's response was "Nice!
9           That's perfect."  Further, it is clear that defendant was
10          in control of his own behavior as he brought the purchase
11          price in cash to the hotel; when it came time to pay the
12          human trafficker, defendant handed over $260 without
13          question.
14      • Demonstrating a clear-headed understanding that paying for
15          sex with a 6-year-old was illegal, and further
16          demonstrating a calculated desire not to be caught,
17          defendant suggested that prior to having sex with the
18          children, the men get together and smoke meth and expose
19          their genitals to each other to ensure none of them were
20          law enforcement.
21      • Defendant's attempt to rape a six-year-old is not the only
22          evidence of his sexual interest in children, which also
23          includes the images of child pornography found on his
24          phone, the evidence of his membership in a members-only
25          site strictly dedicated to men with a sexual interest in
26          children, and his blog post titled "cum on kids."
27      • The government appreciates the support defendant has from
28          his community.  However, the fact that none of them knew of

17

          defendant's secret drug addiction or his sexual interest in
          children suggests that defendant was in control of his
          actions, and able to mask the ones that he knew would meet
          with disapproval.

The government agrees with defendant that he is a drug user; however, there is simply no evidence that drug abuse contributed to his sexual interested in children, or that that it excuses or even explains his determined efforts to rape a six-year-old. Further, even if the Court assumes that defendant's drug use contributed to his offense, this only decreases defendant's future risk to children to the extent that the Court is also willing to assume that defendant will be successful in his drug rehabilitation efforts. The government certainly hopes that defendant will successfully fight his drug addiction, but given how difficult this struggle can be, a drug addiction that contributes to the sexual abuse of minors is an additional risk factor, not a mitigating factor.[3]

    As another mitigating factor, defendant claims that he was molested as a child. While child sexual abuse often goes unreported, the Court should nevertheless consider that defendant's initial disclosure of childhood abuse was made only after he was arrested in this case, and was facing a significant sentence. Assuming that

---

[3] Reviewing a number of psychology reports submitted by the defense in child pornography cases, Dr. Daryl Turner noted that it is not uncommon for a defendant to claim that his drug and alcohol problem indicates that he poses a lower risk to children, because his child pornography offense was the result of drunk/high behavior, and not a sexual interest in children. However, Dr. Turner writes that that there is a growing body of research suggesting that factors such as drug and alcohol abuse can increase the likelihood of offending. Darrel Turner et al., The Sentencing Battleground: Understanding the Current Psychology Research and Refuting Defense Psychology and Risk Assessment Reports at Sentencing, UNITED STATES ATTORNEYS' BULLETIN, July 2015 at 50.

defendant's disclosure is true, it is certainly sympathetic. However, there is no evidence supporting a connection between a sexual offense against a child and an offender's own victimization as a child.

> Research across decades has shown that being sexually abused as a child is not a significant risk factor for reoffending among sex offenders. Further, it is not predictive or correlated with sexual offending in general — that is, being sexually abused as a child does not mean one is likely to grow up and commit a sex offense against a child at some point. This fact is a major point of therapeutic relief for victims of childhood sexual trauma who are in treatment. Essentially, these victims learn that, despite what occurred to them in their childhood, there is not a likelihood that they will one day have an urge to offend against children or to develop a sexual attraction to children.

Darrel Turner et al., The Sentencing Battleground: Understanding the Current Psychology Research and Refuting Defense Psychology and Risk Assessment Reports at Sentencing, UNITED STATES ATTORNEYS' BULLETIN, July 2015 at 57, citing Karl Hanson & Kelly Morton-Bourgon, The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies, 73 J. OF CONSULTING AND CLINICAL PSYCHOLOGY 1154, 1154-1163 (2005) and the Center for Sex Offender Management, http://csom.org/train/etiology/index.html.

The government understands defendant's argument that incarceration in the United States is especially difficult for him, given that his family is in Australia and will be unable to visit. However, defendant made the decision to travel from Australia to the United States to molest a child – the location of his offense was chosen by defendant, not the government.

Considering the factors set forth in Title 18, United States Code, Section 3553(a), including the nature and history of the defendant, the serious nature of the offense, and the need to deter

19

both defendant from reoffending and others from committing similar offenses, the government recommends a sentence of 11 years' incarceration, followed by a lifetime period of supervised release. This is at the middle of the 10-to-14-year range agreed to pursuant to the plea agreement, and is well below the 15-year minimum sentence mandated by § 1591 – a Count dropped pursuant to the plea agreement but which the Court can consider in determining the appropriate sentence.